433 F.2d 279
 CAPITAL BANCSHARES, INC., Plaintiff-Appellant-Cross Appellee,
v.
NORTH AMERICAN GUARANTY INSURANCE COMPANY and David M. Pack, Commissioner of the Department of Insurance and Banking, State of Tennessee, etc., Defendants-Appellees-Cross Appellants.
 No. 28638.
 United States Court of Appeals, Fifth Circuit.
 October 5, 1970.
 Rehearing Denied November 10, 1970.
 
 Gibson Tucker, Jr., James Foley, III, Tucker & Schonekas, New Orleans, La., for plaintiff-appellant.
 Peter T. Dazzio, Robert L. Roland, Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, La., for defendants-appellees.
 Before JOHN R. BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 In an extremely complex factual setting, we would face here the often equally complex question of removal.[1] In Louisiana garnishment proceedings, the Court below refused to remand the case to the state Court and on the merits dissolved the attachments that it had ordered. Believing that there is no appealable order before us, we dismiss the appeal.[2]
 
 
 2
 Any comprehensible explanation of the problems here must begin with a rather detailed outline of the facts under which the case arose. In August 1967, Bank[3] issued a certificate of deposit for $125,000 payable to Commissioner Pack.[4] Pack was the statutory trustee for the protection of the Tennessee policyholders and creditors of Insurance Company.[5] In February 1968, Bank filed an interpleader action under 28 U.S.C.A. § 1335 in the U.S. District Court for the Eastern District of Louisiana. The interpleader stated that both Pack and Bancshares[6] were asserting claims to the assets of the now defunct Insurance Company and that both were thereby asserting claims to the certificate of deposit. Accordingly, Bank deposited $127,187, representing the proceeds due on the certificate, into the registry of the federal Court.
 
 
 3
 In August 1968 Bancshares filed suit in state Court in Louisiana naming Pack and Insurance Company as defendants and the U.S. District Clerk and Bank as garnishees. Bancshares asserted that Insurance Company had breached a stock sale with exchange agreement and sought a half million in damages. Bancshares alleged that it was entitled to a writ of attachment against the property of defendants,[7] who were nonresidents of Louisiana, and sought to garnish the funds in the federal Court registry. The attachment was solely to obtain in personam jurisdiction over nonresident defendants and not to secure any peculiar interest in the property seized.[8] The attachment issued, and Bank and the District Clerk answered the garnishment interrogatories saying essentially that the funds were in Court custody, and therefore not subject to garnishment.
 
 
 4
 Then on September 17, the interpleader was dismissed on the ground of lack of venue.[9] However the funds were not released but stayed in the Clerk's custody.
 
 
 5
 On September 30, Pack filed with the Secretary of State a formal appointment of an agent for service of process.[10] On October 4, Pack and Bank filed in the state proceeding a motion to dissolve the attachment on two grounds.[11]
 
 
 6
 On November 8, the motion to dissolve was submitted and heard on its merits by the state Court. On January 29, 1969, on Bank's motion, the federal Court allowed Bank to withdraw the funds from the registry of the federal Court. This instantly triggered more litigation, for the same day Bancshares filed in the state Court proceeding a Supplemental Petition for Attachment against the original defendants (Pack and Insurance Company) with Bank as garnishee. The writ issued and pursuant to it Bank turned over the money to the Sheriff of the Parish of Orleans.
 
 
 7
 On February 26, 1969,[12] Defendants filed in the state Court motions to dissolve the supplemental writs.[13] The next day, Defendants filed in the federal Court a petition for removal. On March 12, Bancshares moved to remand to the state Court. In April, the federal Court denied the motion to remand, and on June 2, Defendants moved the federal Court to dissolve the original attachment, on the identical grounds urged in state Court. See note 11, supra. Likewise on June 9 Defendants moved to dissolve the supplemental writs on the identical grounds urged in state Court. See note 13, supra. And on June 11, Defendants moved that the case be dismissed for lack of capacity to be sued and for failure of the original petition to state a claim for which relief could be granted. F.R.Civ.P. 12(b). On August 20, the District Court dissolved the original writ because the funds at the time were not subject to attachment. The Court also dissolved the supplemental writs because Defendants at the time were subject to service of in personam process in Louisiana. But the motions to dismiss for lack of procedural capacity and for failure to state a claim were denied. The federal Court thereby held that there (i) was a case stated for trial on the merits, and (ii) against nonresident defendants over whom the Court had personal jurisdiction.
 
 
 8
 On September 2, Defendants (Pack and Insurance Company) moved to withdraw the funds. In the meantime Bancshares on September 17 had filed a notice of appeal. The District Court authorized the release of the funds to Pack. But the order also, in effect, allowed an interlocutory appeal from the order dissolving the two writs (and presumably the denial of remand) but required Bancshares to post a $127,000 supersedeas bond.[14] Otherwise the funds would be released. For reasons we do not attempt to surmise, the bond was not filed on time[15] and the District Court permitted Pack to withdraw the funds on November 26, 1969.[16] The funds, if not completely disbursed, are no longer in Louisiana or in the Fifth Circuit. As the case stands before us now, Bancshares argues that the Court improperly denied its motion for remand and that as a corollary the Court improperly dissolved the attachments of the state Court.
 
 
 9
 Though the path into this factual labyrinth is difficult, we, like Theseus, find that a narrow thread makes the return journey easy. For the resolution of this case hinges on the appealability of the order before us. A refusal to remand is not a final order and standing by itself cannot be appealed. Lewis v. E. I. DuPont De Nemours & Co., 5 Cir., 1950, 183 F.2d 29, 31. See also 28 U.S.C.A. § 1447(d). And so this appeal can be sustained only if the remand appeal is incidental to some "final" appealable judgment. Here the only order to tie it to is that dissolving the attachments. We hold that the orders of dissolution are not final and therefore must dismiss the appeal.
 
 
 10
 In 21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System, 5 Cir., 1968, 404 F.2d 31, this Court found that an order quashing and dissolving a writ of attachment used to acquire in personam jurisdiction over a nonresident was not a final order. We therefore dismissed the appeal for want of jurisdiction. Turtle Creek is direct and controlling. None of the pragmatic factors delineated there, singly or collectively, add up to make an otherwise interlocutory order a "final" one.
 
 
 11
 The attachments had nothing to do with the subject matter of the underlying suit for damages but rather were used strictly as a means to acquire in personam jurisdiction over the person of the nonresident defendants. Since the suit began, Defendants have submitted to the in personam jurisdiction of the Louisiana Courts and by removal to the federal Court. Not only are all parties now before the District Court, but that Court refused to dismiss the suit for failure to state a claim. Thus the full merits of the damage suit are still before it. When a final judgment is entered, Bancshares, if dissatisfied, can then appeal and presumably raise the same issues as are now being pressed.
 
 
 12
 This appeal must be dismissed. With this also falls the cross appeals of Pack for attorney's fees and for damages resulting from the improvident attachments.
 
 
 13
 On some prior occasions in situations where the order was found not to be final and thus not appealable or when mandamus was sought, we have invited the parties to resubmit the matter to the District Court for reconsideration on the merits with certification under § 1292 (b). But we expressly decline to do this here. There is not the slightest possible whisper of a suggestion that on any such certification we would allow the interlocutory appeal. For we would be inviting a mere academic excursion since for all practical purposes, the question of the attachments is moot — the funds have been withdrawn, and Insurance Company has no other assets in Louisiana. Whatever might be left of the issue on any appeal from the really "final" final judgment some day to be entered, the case is not certworthy as an interlocutory appeal.
 
 
 14
 Appeal dismissed.
 
 
 
 Notes:
 
 
 [1]
 Indeed, as far back as 1912 it was stated "there is no other phase of American jurisprudence with so many refinements and subtleties, [as] removal proceedings * * *." Hagerla v. Mississippi River Power Co., 1912, S.D.Iowa, 202 F. 771
 
 
 [2]
 "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court."
 28 U.S.C.A. § 1291.
 
 
 [3]
 The National American Bank of New Orleans
 
 
 [4]
 David Pack, the Insurance Commissioner for the State of Tennessee
 
 
 [5]
 North American Guaranty Insurance Company, an Arkansas corporation
 
 
 [6]
 Capital Bancshares, Inc., a Florida corporation
 
 
 [7]
 "A writ of attachment may be obtained when the defendant:
 * * * * *
 (5) Is a nonresident who has no duly appointed agent for service of process within the state."
 La.Code Civ.Pro. § 3541(5).
 
 
 [8]
 La.Code Civ.Pro. § 3544 provides:
 "The security required for the issuance of a writ of attachment shall be for the amount of the plaintiff's demand, exclusive of interest and costs. If the writ is obtained on the sole ground that the defendant is a nonresident, the security shall not exceed two hundred fifty dollars, but on proper showing the court may increase the security to any amount not exceeding the amount of the demand."
 Here Bancshares had to provide security of $250.00.
 
 
 [9]
 The correctness of this order is not before us for review, but with the debtor Bank and the fund in New Orleans and the two adverse claimants of diverse citizenship, it is not easy for us to discern the unrevealed venue defect. 28 U.S. C.A. § 1335
 
 
 [10]
 The filing was pursuant to LSA-RS 13:3485
 
 
 [11]
 The grounds were: (i) money in the custody of the federal Court was not subject to state Court attachment and (ii) Tennessee is a reciprocal state within the meaning of the Louisiana Insurance Code that expressly provides no attachment shall issue out of a state Court against a delinquent insurer or its assets:
 "During the pendency of delinquency proceedings in this or any reciprocal state no action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets. Any lien obtained by any such action or proceeding within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in such delinquency proceeding."
 LSA-RS 22:762.
 A reciprocal state is defined as:
 "any state other than this state in which in substance and effect the provisions of this law are in force, including the provisions requiring that the insurance commissioner or equivalent insurance supervisory official be the receiver of a delinquent insurer."
 LSA-RS 22:757(7).
 
 
 [12]
 This date was nowhere to be found in the record presented on appeal. We verified it by search of the Louisiana Civil District Court record
 
 
 [13]
 The grounds were: (i) Defendants were not nonresidents; (ii) the property is in the hands of the sheriff and thus immune from attachment; (iii) Plaintiffs failed to secure leave to sue the receiver, an inaction which creates a jurisdictional bar; and (iv) a foreign corporation or one of its shareholders cannot attach property of a foreign corporation in another state where the claim for which the property was attached arose out of or was connected with the shareholder relationship
 
 
 [14]
 We consider the action of the District Judge to be the equivalent of a certification for Interlocutory Appeal under 28 U.S.C.A. § 1292(b). That order read:
 "IT IS ORDERED that plaintiff, Capital Bancshares, Inc., be granted an interlocutory appeal from the judgment rendered herein dissolving its writs of attachment on the ground that irreparable harm may result and that a stay order issue contingent upon it posting a supersedeas bond in the amount of $127,000.00."
 This required Bancshares to seek within ten days an allowance for the appeal by this Court. This it failed to do. And if the order below is not a "final" one we have no jurisdiction to treat it as an abortive interlocutory appeal. Stelly v. Employers Nat'l. Ins. Co., 5 Cir., 1970, 431 F.2d 1251.
 The bond was not really a condition to the appeal but rather a device for avoiding the mootness that would essentially follow the release of the funds.
 
 
 [15]
 The bond was filed November 28, two days after the funds were released
 
 
 [16]
 Prior to this, on October 31, Bancshares gave notice that it would apply for writs of certiorari, mandamus, and prohibition to stay the bond which it felt was too onerous